IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



JACK PENNINGTON III,

and

LISA EUBANKS

    Plaintiffs,

v.                                                                              Civil Action No. 2:10cv361

PNC MORTGAGE, A DIVISION OF PNC BANK, N.A.,

and

SAMUEL I WHITE, P.C. AS SUBSTITUTE TRUSTEE

    Defendants.

## ORDER

This matter comes before the Court on a Complaint and Petition for a Preliminary Injunction, filed by Plaintiffs Jack Pennington, III and Lisa Eubanks (collectively, "Plaintiffs") on July 20, 2010, and a cross-motion to dismiss filed by Defendant Samuel I. White, P.C. on August 10, 2010. For the reasons stated herein, the Court hereby **DENIES** Plaintiff's Petition for a Preliminary Injunction. The Court hereby **GRANTS** Samuel I. White, P.C.'s motion to dismiss Plaintiffs' claims insofar as they relate to alleged violations of the Home Affordable Modification Program ("HAMP"). The Court *sua sponte* **DISMISSES** Plaintiffs' claims against Defendant PNC Mortgage for lack of standing insofar as they relate to alleged violations of HAMP. There being no other basis for federal jurisdiction, the Court hereby **REMANDS** the remainder of Plaintiffs' Complaint to the Circuit Court of the City of Chesapeake.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are the owners of a tract of real estate located in the City of Chesapeake. (Compl. ¶1.) On March 24, 2008, Plaintiffs took out a first mortgage lien in the amount of $318,000 with National City. (Compl. ¶2.) The mortgage note is currently held by Defendant P.N.C. Mortgage ("PNC"). (Id.). Plaintiffs allege that when the original loan was processed, the value of the property was erroneously calculated based on the value of the land alone, without accounting for value of a house located on the property. (Compl. ¶3.) The error was detected in February 2009, and Plaintiffs' mortgage payments increased by $500 per month as a result. (Id.) Plaintiffs were unable to afford these increased payments. (Id.)

Plaintiffs allege that on October 7, 2009, National City placed them on a three-month Trial Modification Plan pursuant to the Home Affordable Modification Program ("HAMP"). (Compl. ¶4.) Under the terms of this plan, Plaintiffs would make monthly mortgage payments of $2,006.36. (Id.) On April 22, 2010, however, PNC allegedly "denied Plaintiffs for a final HAMP modification due to a negative Net Present Value." (Compl. ¶7.) On June 22, 2010, PNC instructed Defendant Samuel I. White, P.C. ("SIW") to initiate foreclosure proceedings on Plaintiffs' property. (Compl. ¶8.) Despite Plaintiffs repeated efforts to re-enter the HAMP program, their property remains subject to foreclosure proceedings.

Plaintiffs filed the instant Complaint and Petition for a Preliminary Injunction on July 20, 2010, in the Circuit Court for the City of Chesapeake, Virginia. Plaintiffs' claims can be divided into two categories. First, Plaintiffs allege that National City was negligent in calculating the value of their property, and that "PNC inherited NC's liability when it purchased NC." (Compl. ¶21.) Second, Plaintiffs allege that PNC and SIW "violated its contractual obligations, and fraudulently accepted government funds, by not servicing Plaintiff's [sic] loan under the rules of the HAMP." (Compl. ¶22.) In connection with this second allegation, Plaintiffs claim that PNC and SIW violated their HAMP obligations in nine specific ways, including negligently or fraudulently withdrawing Plaintiffs' "workout package from loss mitigation" and "proceeding with the trustee auction after Plaintiff [sic] submitted new documents to

Defendant PNC for HAMP review." (Compl. ¶¶23–33.)¹ Plaintiffs seek a preliminary injunction to enjoin "Defendants PNC and SIW and each of them, their servants, agents, employees or other parties acting on their behalf from instituting foreclosing proceedings on the instant property. Plaintiff further asks the court to order PNC to properly process Plaintiff's Home Affordable Modification Application." (Emphasis removed). They also seek $2,500,000 in punitive damages.

On July 23, 2010, SIW filed a Notice of Removal removing this action to this Court. PNC expressly consented to this removal. SIW claims that "[f]ederal question jurisdiction pursuant to 28 U.S.C. §1331 exists over this action because Plaintiffs assert claims involving questions that will require resolution of significant disputed issue [sic] of federal law, including Plaintiffs' claims under the federal National Housing Act, 12 U.S.C. §1701 *et seq.*, which is where HAMP is codified, and federal public laws enacted by Congress under the United States Constitution." (Notice of Removal at 4.)

On August 10, 2010, SIW filed a 12(b)(6) Motion to Dismiss this action. SIW argues, *inter alia*, that Plaintiffs do not have a private cause of action under HAMP against a trustee.

## II. LEGAL STANDARD

Until 2008, the Fourth Circuit followed the four-factor Blackwelder test in determining whether a preliminary injunction should be granted. These factors were: "1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is not granted; 2) the likelihood of harm to the defendant if the preliminary injunction is granted; 3) the likelihood that plaintiff will succeed on the merits; and 4) the public interest." Hughes Network Sys., Inc. v. Interdigital Comms. Corp., 17 F.3d 691, 693 (4th Cir. 1994) (citing Blackwelder Furniture Co. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977). The first two factors were "the two most important factors," and interim injunctive relief could be granted if the balance of these factors weighs in favor of the plaintiff, even if "grave or serious questions are presented for ultimate decision." Darr v. Masinga, 838 F.2d 118, 120 (4th Cir. 1988).

---

¹Hereinafter, the Court will refer to the allegations in ¶¶22–31 as Plaintiffs' "HAMP-related claims."

In 2008, however, the Supreme Court clarified the standards for injunctive relief in <u>Winters v. NRDC</u>. <u>Winters</u> emphasized that "injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," overruling a more permissive standard employed by the Ninth Circuit. 129 S. Ct. 365, 374 (2008) In light of the Court's ruling in <u>Winters</u>, the Fourth Circuit has abandoned the <u>Blackwelder</u> test and held that to obtain a preliminary injunction, a plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." <u>Winter v. NRDC</u>, 129 S. Ct. 365, 374 (2008); <u>Real Truth About Obama, Inc. v. FEC</u>, 575 F.3d 342, 346 (2009); <u>Allegra Network LLC v. Reader</u>, No. 1:09cv912, 2009 WL 3734288 (E.D. Va. Nov. 4, 2009) (slip op.).

Federal Rule of Civil Procedure 12(b)(6) permits a party to move the court to dismiss an action if the plaintiff fails to state a claim upon which relief can be granted. In evaluating the sufficiency of a complaint, a district court must engage in a two-step process. First, the court must begin by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal v. Ashcroft</u>, 129 S. Ct. 1937, 1949 (2009). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Second, the court must decide whether the remaining allegations in the complaint—taken as true—state a "plausible claim for relief." <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 570). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense" to decide whether the facts "permit the court to infer more than the mere possibility of misconduct."

When considering a motion made pursuant to Rule 12(b)(6), the court is generally limited to a review of the pleadings filed in the case. Exhibits attached to the pleadings are considered a part of the complaint. Fed. R. Civ. P. 10(c). Additionally, "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral

to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'" Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)).

### III. ANALYSIS

Plaintiffs seek a preliminary injunction to enjoin "Defendants PNC and SIW and each of them, their servants, agents, employees or other parties acting on their behalf from instituting foreclosing proceedings on the instant property. Plaintiff further asks the court to order PNC to properly process Plaintiff's Home Affordable Modification Application." (Emphasis removed). As noted above, Plaintiffs' Complaint can be divided into two sets of allegations: a state-law negligence claim against PNC for the negligent appraisal of Plaintiffs' property (Compl. ¶21) and a federal claim against PNC and SIW for actions in violation of applicable HAMP Guidelines (Compl. ¶¶22–33). As Plaintiffs' HAMP-related claims make up the bulk of their Complaint and the sole basis for federal jurisdiction, the Court will address these allegations first.

HAMP is a federal program created pursuant to the Emergency Economic Stabilization Act, 12 U.S.C. § 5201 (2008). HAMP is intended to financially assist three to four million homeowners who have defaulted on their mortgages or who are in imminent risk of default. In a nutshell, HAMP provides financial incentives to participating mortgage servicers to modify the terms of eligible loans by lowering monthly payments to sustainable levels. Participating mortgage servicers enter into contracts with Fannie Mae, in its capacity as a financial agent of the United States, to perform loan modification services. In exchange, these mortgage servicers receive financial incentives. See generally Williams v. Geithner, No. 09-1959, 2009 WL 3757380 (D.Minn. Nov.9, 2009) (outlining the HAMP program). Notably, participating loan servicers enter into contracts directly with Fannie Mae. Individual homeowners are not parties to these contracts.

In the present case, Plaintiffs do not allege that they are parties to the contract between PNC and Fannie Mae. Nor do they identify the statutory or legal basis for the HAMP-related claims. Since Plaintiffs are not in privity to the contract between HAMP and Fannie Mae, their HAMP-related claims

can rest on one of only two possible grounds: a private right of action to enforce HAMP, or a claim as third-party beneficiaries to the contract between HAMP and Fannie Mae.

Courts have consistently held that homeowners do not have a private right of action to enforce HAMP regulations. See, e.g., Hoffman v. Bank of America, No. C 10-2171, 2010 WL 2635773 (N.D. Cal. June 30, 2010) (slip op.); Manabat v. Sierra Pacific Mort. Co., No. CV F 10-1018, 2010 WL 2574161 (E.D. Cal. June 25, 2010) (slip op.); Marks v. Bank of America, No. 03:10-cv-08039, 2010 WL 2572988 (D. Ariz. June 22, 2010) (slip op.); Aleem v. Bank of America, No. EDCV 09-01812-VAP, 2010 WL 532330 (C.D. Cal. Feb. 9, 2010) (slip op.).

The Court finds these precedents to be persuasive. The applicable statute, 12 U.S.C. §5229, does not expressly create a private right of action against participating mortgage servicers. Instead, it allows those aggrieved by the actions of the Treasury Department to sue the Secretary of the Treasury. By the designation of the Secretary of the Treasury, Freddie Mac serves as compliance officer for HAMP. See U.S. Dep't of Treasury, Supplemental Directive 2009-08, at 4 (Nov. 3, 2009). The creation of this private right of action against the Secretary of the Treasury, coupled with the delegation of enforcement authority to Freddie Mac, strongly implies that Congress did not intend to create a separate cause of action against participating mortgage servicers. See Reyes-Gaona v. N.C. Growers Ass'n, 250 F.3d 861, 865 (4th Cir.2001) (reiterating that "the doctrine of expressio unis est exclusio alterius instructs that where a law expressly describes a particular situation to which it shall apply, what was omitted or excluded was intended to be omitted or excluded."). The Court further finds that Plaintiffs are not members of a class for whose "especial benefit" HAMP was enacted, that Plaintiffs' proposed cause of action will not advance HAMP's underlying legislative scheme, and that their cause of action is one that is traditionally relegated to the state law of mortgage foreclosures. See Marks, 2010 WL 2572988, at *6–8 (evaluating private right of action pursuant to HAMP under Cort v. Ash). For all of these reasons, the Court finds that Plaintiffs do not have a private right of action to enforce applicable HAMP regulations.

Plaintiffs have also failed to demonstrate that they have a right to sue as incidental beneficiaries to the contract between PNC and Fannie Mae. Courts have uniformly rejected the argument that

homeowners can sue as third-party beneficiaries to HAMP contracts.[2] See, e.g. Wright v. Bank of America, No. CV 10-01723, 2010 WL 2889117 (N.D. Cal. July 22, 2010) (slip op.); Hoffman, 2010 WL 2635773; Zendejas v. GMAC Wholesale Mortg. Corp., No. 1:10-CV-00184, 2010 WL 2629899 (E.D. Cal. June 29, 2010) (slip op.); Simmons v. Countrywide Home Loans, Inc., No. 09cv1245, 2010 WL 2635220 (S.D. Cal. June 29, 2010) (slip op.); Marks, 2010 WL 2572988.

Again, the Court finds these precedents to be persuasive. "Federal law controls the interpretation of a contract entered pursuant to federal law when the United States is a party [under the contract]." Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir.2000). "In order to prove third party beneficiary status, a party must demonstrate that the contract not only reflects the express or implied intention to benefit the party, but that it reflects an intention to benefit the party directly." Glass v. United States, 258 F.3d 1349, 1354 (Fed. Cl. 2001). Because the United States typically acts in the general public interest, "third parties are presumed to be incidental beneficiaries." S.E.C. v. Prudential Secs., Inc., 136 F.3d 153, 158 (D.C. Cir. 1998) (citing Beckett v. Air Line Pilots Ass'n, 995 F.2d 280, 288 (D.C.Cir.1993)).

Plaintiffs have offered no evidence or argument to rebut the presumption that they are incidental beneficiaries to the contract between Fannie Mae and PNC. Although Plaintiffs have not submitted this contract to the Court, the Court takes judicial notice of the fact that HAMP "Guidelines guarantee only that an eligible borrower will be evaluated for a loan modification," and do not *require* participating mortgage servicers to modify loans. Wright, 2010 WL 2889117, at *4. Indeed, "even Fannie Mae, which has rights under the contract, cannot force [a participating mortgage loan servicer] to make any particular loan modification." Benito v. Indymac Mortg. Servs., No. 2:09-CV-001218, 2010 WL 2130648 (D. Nev. May 21, 2010). Accordingly, Plaintiffs "could not have ... reasonably believed that [PNC] was obligated to

---

[2]The sole exception appears to be Reyes v. Saxon Mortg. Servs., No. 09cv1366 DMS (WMC), 2003 U.S. Dist. LEXIS 125235 (S.D.Cal. November 5, 2009). The Court finds Reyes to be unpersuasive, as the court cited no authority in support of its holding and subsequently renounced the decision. See Villa v. Wells Bank, N.A., No. 10CV81 DMS (WVG), 2010 U.S. Dist. LEXIS 23741 (S.D.Cal. Mar. 15, 2010).

modify [their] loan." Marks, 2010 WL 2572988 at *11.[3] The Court finds that Plaintiffs were incidental beneficiaries to the contract between Fannie Mae and PNC, and that they have no judicially-enforceable rights under the contract.

## IV. CONCLUSION

For all of the foregoing reasons, it is clear that Plaintiffs do not have standing to challenge Defendants alleged breaches of HAMP Guidelines and regulations. SIW's Motion to Dismiss Plaintiffs' HAMP-related claims is hereby **GRANTED**. The Court also dismisses Plaintiffs' HAMP-related claims against PNC *sua sponte*. See Bluemark, Inc. v. Geeks on Call Holdings, Inc., No. 2:09cv322, 2010 WL 28720 (Jan.5, 2010) ("A court can raise the issue of standing sua sponte at any time during litigation." (citing Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004)). This leaves only one allegation in Plaintiff's Complaint:

> NC's initial negligence in evaluating the property without the house, and then increasing Plaintiff's payments by an unreasonable and unconscionable amount of money due to NC's mistake, is the reason Plaintiffs are facing possible foreclosure. Defendant PNC inherited NC's liability when it purchased NC.

(Compl. ¶21.) The remaining allegations in Plaintiff's Complaint and Petition for Preliminary Injunction are hereby **DISMISSED**.

The allegation contained in ¶21 is plainly founded on state law. A district court may decline to exercise discretion over a state-law claim after dismissing all claims over which it has original jurisdiction. See 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction" (emphasis added)); Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir.1996). As a general matter, if the federal claims are dismissed before trial, the state claims should be dismissed as well. Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Under the circumstances, the Court sees no reason to vary from this general rule, particularly since Plaintiffs initially filed their claim in state court and neither party has submitted any

---

[3]For similar reasons, Plaintiffs could not have reasonably interpreted the contract to provide a judicially-enforceable right to an evaluation for HAMP. HAMP Guidelines provide that "the right to such evaluation is enforceable only through an administrative process." Wright, 2010 WL 2889117, at *4–5 (citing Williams, 2009 WL 3757380).

detailed factual evidence. Accordingly, the Court hereby **REMANDS** this case to the Circuit Court of the City of Chesapeake for further proceedings. See Carnegie-Mellon University v. Cohill, 484 U.S. 343, 351 (noting that court can remand under Gibbs if original claim was filed in state court).

The Clerk of Court is **DIRECTED** to transmit a copy of this Order to all counsel.

**IT IS SO ORDERED.**

Norfolk, Virginia
August, 2010

/s/
Robert G. Doumar
Senior United States District Judge